IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY ELLIS, | ) | CASE NO. 1:10-CV-100 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties (Doc. 19). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff Larry Ellis's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court REVERSES the decision of the Commissioner and orders that the case be REMANDED for further proceedings not inconsistent with this decision.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On December 5, 2005, Larry Ellis ("Plaintiff" or "Ellis") protectively filed an application for a Period of Disability and Disability Insurance Benefits (Tr. 93-95, 127).  On December 7, 2005, he filed an application for Supplemental Security Income (Tr. 90-92).  Both applications alleged that Ellis became disabled on November 5, 2004, due to suffering from carpal tunnel syndrome, arthritis, and a large cyst in the back of his knee (Tr. 90, 93, 107).  Plaintiff's date last insured for purposes

of his Disability Benefits application was December 31, 2006 (Tr. 127). Ellis's applications for benefits were denied initially and upon reconsideration (Tr. 32-34, 73-81). Subsequently, Plaintiff timely requested and was granted an administrative hearing (Tr. 71, 68-69).

On December 5, 2008, Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge Peter R. Bronson (the "ALJ" or "ALJ Bronson") (Tr. 293-312). Medical expert, Dr. Richard Katzman, also appeared at the hearing and testified (Tr. 300-09). Vocational expert, Kevin Yi, appeared at the hearing but did not testify. During the hearing, ALJ Bronson and Plaintiff's attorney agreed that Plaintiff needed to undergo a consultative examination prior to the ALJ rendering a decision on Ellis's pending applications. Therefore, the ALJ adjourned the proceeding to allow for this examination and advised Ellis that he would conduct a supplemental hearing following the completion of the consultative examination. The supplemental hearing was held on April 29, 2009 (Tr. 314-51). Plaintiff again appeared with counsel and testified (Tr. 316-21). Vocational expert, Carol Mosley, and medical expert, Dr. Hershel Goren, also appeared and testified (Tr. 321-48). After the hearing, Plaintiff's counsel submitted a letter to the ALJ seeking to amend Plaintiff's onset date to September 27, 2006 (Tr. 99, 101).

The ALJ issued an unfavorable decision on September 4, 2009, in which he applied the five-step sequential evaluation,[1] and determined that Plaintiff had not established that he suffered from

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

a medically determined impairment, and therefore, was not disabled (Tr. 12-30). Ellis requested review of the ALJ's decision from the Appeals Council (Tr. 8). On December 9, 2009, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 2-4). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

Plaintiff, born on December 22, 1961, was forty-seven years old at the time of the supplemental hearing (Tr. 296). He graduated from high school in 1980, and has a certificate in business bookkeeping. *Id*. Ellis has past experience working in various positions in the fast food industry (Tr. 339-41).

## II. MEDICAL EVIDENCE[2]

Ellis began seeing Dr. Bilfield as early as November of 2004 (Tr. 230). Dr. Bilfield's notes from that time reflect that Plaintiff presented to him with numbness and tingling in his left wrist and

---

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

[2]The Court's discussion of the medical evidence is limited to the evidence called into question by Plaintiff. The parties' briefs contain a full chronological listing of all the medical evidence in the record, but the Court's ruling does not necessitate a discussion of the evidence omitted from its opinion.

hand after suffering a recent injury at work.  Plaintiff later began to develop problems with his knees, and in January of 2006, Dr. Bilfield performed arthroscopic surgery on Ellis's right knee (Tr. 246). Dr. Bilfield continued to treat Ellis's knee problems after the procedure through 2009 (Tr. 152-53, 205-25).  In October of 2008, Dr. Bilfield ordered magnetic resonance imaging ("MRI") of Plaintiff's ankles.  The doctor interpreted the MRI as showing "some nebulous kind of anterior tissue swelling without any evidence of neoplasm." (Tr. 162).  Dr. Bilfield also ordered a MRI of Plaintiff's knees in March of 2009 (Tr. 152-53).  He commented that the MRI's revealed "significant condylar abnormalities as well as probable meniscal tears" and recommended that Plaintiff have arthroscopy surgery performed on his right knee (Tr. 149).

On April 29, 2009, Dr. Bilfield completed a Medical Source Statement evaluating Plaintiff's physical capabilities (Tr. 147-48).  In it, he limited Plaintiff to lifting and carrying a maximum of six pounds, standing and walking for one hour, and sitting for two to three hours in an eight-hour workday.  The doctor cited Plaintiff's x-ray and MRI results as the medical findings supporting his assessment.  Dr. Bilfield further opined that Ellis should rarely or never climb, balance, stoop, crouch, kneel, or crawl.  However, he placed no restrictions on Plaintiff's ability to reach, handle, feel, or manipulate objects.  Dr. Bilfield also noted that Ellis experienced severe pain.

On September 27, 2006, Plaintiff presented to Dr. Robert Richardson complaining of numbness in his hands and legs (Tr. 244).  Dr. Richardson noted that Ellis had an antalgic gait and diagnosed him with peripheral neuropathy (Tr. 245).  Ellis presented to Dr. Richardson again in June of 2007, asserting problems with arthritis in his knees and numbness in his legs (Tr. 232).  On Plaintiff's next visit, Dr. Richardson remarked that Plaintiff still had an antalgic gait, and had developed a small circular abnormal mass on his right ankle (Tr. 187).  On April 22, 2009, Dr.

Richardson completed a Medical Source Statement assessing Plaintiff's physical impairments (Tr. 165-66). Dr. Richardson opined that Ellis was restricted from carrying or lifting more than five pounds occasionally due to the pain in his knees. He further opined that Ellis could not stand or walk longer than one hour in an eight-hour workday. Dr. Richardson indicated that Ellis should rarely or never climb, balance, stoop, crouch, kneel, or crawl, and that he should not work around heights or moving machinery. He also concluded that Plaintiff experienced severe pain. However, he placed no other restrictions on Ellis's ability to work.

On January 5, 2009, Dr. Shu Huang performed a consultative physical examination of Ellis (Tr. 167-171). In summarizing his results, Dr. Huang began by noting, "[t]here are no significant medically determinable impairments by objective examination although he is very symtomatic [sic] subjectively." (Tr. 170). Dr. Huang opined that Plaintiff retained the ability to occasionally lift and carry up to 15 pounds at waist level. Dr. Huang also remarked that Ellis could sit for a maximum of 30 minute intervals for no more than five hours each workday. The doctor further indicated that Plaintiff could only stand for 20 minute intervals for a maximum of two hours each workday. Additionally, Dr. Huang stated that Ellis should "avoid repetitive stooping or bending, repetitive lifting from the floor level, [and] overhead reaching and climbing." *Id*.

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

After completing a review of the record, ALJ Bronson determined that Ellis was not disabled under the Social Security regulations (Tr. 12-30). At step one of the sequential evaluation analysis, the ALJ found that Ellis had not engaged in substantial gainful activity since his original alleged onset date of November 5, 2004 (Tr. 15). At step two, ALJ Bronson ruled that Plaintiff's knee

6

cartilage tears posed a severe impairment on his ability to perform work. *Id*. However, ALJ Bronson determined that Plaintiff's severe impairment did not meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-19). Before moving to step four, the ALJ found that Ellis retained the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (Tr. 19-26). At step four, ALJ Bronson held that Plaintiff's RFC did not permit him to perform any of his past relevant work as a fast food worker (Tr. 26-27). Finally, at step five, the ALJ concluded that Ellis was capable of performing work which existed in significant numbers in the national economy (Tr. 28-30). Specifically, the ALJ found that Ellis's RFC allowed him to work as an inspection worker, bench assembler, or ticket worker (Tr. 29).

Ellis challenges the ALJ's decision on two grounds. First, Ellis argues that ALJ Bronson failed to properly weigh the medical opinions in the record, namely the opinions of Ellis's treating physicians, Drs. Laurence Bilfield and Robert Richardson, and the opinions of examining physicians, Drs. Shu Que Huang and Franklin Krause. Second, Plaintiff avers that the ALJ's RFC did not adequately account for Plaintiff's hand limitations.

### ALJ's Evaluation Of The Medical Opinion Evidence

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(d)(2). Under the Social Security Regulations, opinions from such physicians are entitled

to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or, are inconsistent with the other substantial evidence in the record. *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table). When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544. These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, and the physician's specialization. 20 C.F.R. § 404.1527(d)(2)-(5). The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion. 20 C.F.R. § 404.1527(d). Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

### 1. ALJ's Error Evaluating Dr. Bilfield's & Dr. Huang's Findings

ALJ Bronson discredited significant portions of Plaintiff's treating physicians' opinions (Tr. 23-24). After analyzing the ALJ's opinion, the undersigned finds that remand is proper. ALJ Bronson's written decision references two Medical Source Statements allegedly completed by Dr. Bilfield. *Id.* On page eleven of his decision, ALJ Bronson indicated that Dr. Bilfield completed his initial assessment of Plaintiff on January 12, 2009 (Tr. 22). The ALJ cited this assessment as

appearing on pages 112-118 of the "F" exhibits. *Id.* These pages correspond to pages 176 through 182 of the transcript (Tr. 176-82). However, the Medical Source Statement contained therein was completed by Dr. Huang, and not by Dr. Bilfield, as evidenced by the last page of the document which contains Dr. Huang's signature and printed name (Tr. 181). The form appears in the transcript following a letter and muscle testing results drafted by Dr. Huang after evaluating Plaintiff's condition (Tr. 167-71).[3] Thus, the ALJ improperly attributed Dr. Huang's Medical Source Statement as belonging to Dr. Bilfield.

Because of this error, ALJ Bronson rejected many of the findings contained within this Medical Source Statement, ruling that they were not supported by Dr. Bilfield's treatment notes (Tr. 23). However, in actuality, the ALJ was comparing Dr. Huang's findings – stated within the Medical Source Statement dated January 12, 2009– with Dr. Bilfield's treatment notes. Therefore, the ALJ's consideration of this evidence was significantly flawed by his faulty identification of the physician who drafted the Medical Source Statement from January of 2009.[4]

---

[3]It is further evident that the Medical Source Statement found on pages 176 through 182 of the transcript was produced by Dr. Huang because both it and the letter and muscle testing results written by Dr. Huang proceeding the Medical Source Statement, have the same time and date stamp, fax number and fax identification code listed on them (Tr. 167-82). The Manual Muscle Testing assessment completed by Dr. Huang references fax pages 2 of 17 through 5 of 17 (Tr. 172-75), the Medical Source Statement references fax pages 6 of 17 through 12 of 17 (Tr. 176-82), and Dr. Huang's letter references fax pages 13 of 17 through 17 of 17 (Tr. 167-71).

[4]Although neither party raised this argument, the ALJ's error was obvious and clear to the Court. The Court notes that ordinarily, its review is limited to the arguments presented by the litigants before it. However, the Court cannot turn its eye away from the blatant prejudicial errors made by the ALJ. *See Benson v. Comm'r of Soc. Sec.*, No. 9:02-CV-57, 2004 WL 3237348 (E.D. Tex. Aug. 30, 2004) (unreported) ("reviewing courts may not summarily abdicate their traditional judicial function of administering justice, nor escape their duty to scrutinize the record as a whole to determine whether the conclusions reached in the decision under review were reasonable and in accord with correct legal standards and the evidence").

ALJ Bronson also discussed the Medical Source Statement dated April 29, 2009, which he correctly identified as being submitted by Dr. Bilfield (Tr. 24). ALJ Bronson explained that he gave no weight to Dr. Bilfield's Medical Source Statement from April of 2009, because it did not adequately address why his findings in this report differed so greatly from his findings stated in his assessment completed in January of 2009 (Tr. 24). Dr. Bilfield's findings varied from the Medical Source Statement dated January 12, 2009, because as addressed above, the Medical Source Statement from January of 2009 was submitted by Dr. Huang and not by Dr. Bilfield. Accordingly, the ALJ erred in discrediting Dr. Bilfield's findings on this basis. The ALJ's errors are detrimental to the validity of his overall assessment of the medical opinion evidence in the record because it leaves the Court to guess whether the ALJ made similar mistakes in his evaluation of the remaining medical opinions in the record. Remand is necessary in order to allow ALJ Bronson to properly evaluate the medical opinions in light of his errors.

2. <u>ALJ's Use Of Plaintiff's Statement To Discredit Treating Physicians' Opinions</u>

Finding that remand is appropriate, the undersigned also urges the ALJ to reevaluate his decision to discredit Plaintiff's treating physicians' opinions based on a statement made by Plaintiff. On Ellis's disability report, Form 3368, he indicated that he was laid off from his job after his employer failed to abide by his doctor's orders instructing that Plaintiff be restricted to "light duty" (Tr. 107). ALJ Bronson referenced this statement by Plaintiff several times throughout his opinion. Particularly, the ALJ cited this statement in discounting the findings of Drs. Richardson, Huang, and Bilfield (Tr. 22-24). Although the face of the disability report does not reveal the date on which it was created, it is apparent that Ellis's statement was referring to his doctor's assessment of his physical capabilities prior to his termination of employment in November of 2004, and prior to his

10

original alleged onset date (Tr. 107). The ALJ's opinion did not sufficiently explain how this statement – reflecting Plaintiff's condition outside of the relevant time period– undermined the findings of the medical sources who evaluated Plaintiff's impairments during the time period under review. This is troublesome because the medical opinions which the ALJ discounted were penned several years after Plaintiff's physician would have restricted him to light duty at work. For example, both Drs. Bilfield and Richardson completed their evaluations of Ellis's physical conditions in 2009, whereas the doctor that restricted Plaintiff to light duty did so prior to November of 2004, when Plaintiff was terminated from his job. Therefore, the undersigned finds that the ALJ's reliance upon any apparent conflict between Plaintiff's statement and his treating physicians' opinions, as a basis to discredit those physicians, is misplaced. On appeal, the ALJ must follow the dictates of 20 C.F.R. § 404.1527(d) and give sufficiently "good reasons" for the weight he assigns to Ellis's treating physicians' opinions.

It is unnecessary for the Court to resolve the remaining issues identified by Plaintiff, as it has already concluded that remand is proper.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge **REVERSES** and **REMANDS** the decision of the Commissioner to the Social Security Administration for further proceedings not inconsistent with this opinion.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: June 6, 2011.